1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

LAUREN MARIE BARBIERO, et al.,

8

Plaintiffs,

9

v.

10

CHARLES SCHWAB INVESTMENT
ADVISORY, INC., et al.,

11

Defendants.

12
13

Case No.  21-cv-07034-PJH

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. Nos. 48, 49, 51

14     Defendants' motion to dismiss came on for hearing before this court on June 2,

15   2022.  Plaintiffs appeared through their counsel, Garrett Wotkyns.  Defendants appeared

16   through their counsel, Jason Mendro.  Having read the papers filed by the parties and

17   carefully considered their arguments and the relevant legal authority, and good cause

18   appearing, the court hereby GRANTS the motion for the following reasons.

19                                    **BACKGROUND**

20     Lauren Marie Barbiero, Kimberly Jo Lopez, William Kenneth Lopez, and Tammy L.

21   Coleman ("plaintiffs") bring this class action lawsuit against the Charles Schwab

22   Corporation ("CSC") and its wholly owned subsidiary Charles Schwab Investment

23   Advisory, Inc. ("CSIA") (collectively, "defendants").

24     In their first amended complaint ("FAC"), plaintiffs allege that Schwab Intelligent

25   Portfolios ("SIP") is an investment robo-advisor product launched by defendants in 2015.

26   Dkt. 35 ("FAC") ¶ 2.  They allege that defendants' clients complete an online

27   questionnaire to set up their "investor profile" establishing, among other things, their

28   financial goals, risk tolerance, and investment timelines.  Id. ¶¶ 4, 50.  Plaintiffs allege

1   that, based the questionnaire answers, the SIP Program constructs an investment

2   portfolio for an investor that usually consists of a selection of exchange-traded funds

3   ("ETFs") and similar investments.  Id. ¶ 5.

4       Plaintiffs allege that defendants employ a unique fee system in connection with

5   SIP, advertising the plan as a free service.  Id. ¶¶ 10–11.  But plaintiffs allege that instead

6   of charging SIP clients an annual fee, defendants, among other things, "sweep the cash

7   allocation of client managed accounts into Schwab Bank and earn a net interest margin

8   on this cash."  Id. ¶ 15.  Plaintiffs allege that defendants have made at least hundreds of

9   millions of dollars in skimming earned interest (a.k.a., "cash sweeps") away from linked

10  cash accounts of SIP clients held at Charles Schwab Bank.  Id. ¶ 18.

11      Plaintiffs allege that defendants overconcentrated plaintiffs' SIP accounts in cash

12  during the "white-hot boom years" on the stock market.  Id. ¶ 19.  Plaintiffs allege they

13  and the class missed out on significant market gains.  Id.  Plaintiffs allege that

14  defendants' self-dealing directly caused plaintiffs and the proposed class over half a

15  billion dollars in losses.  Id. ¶ 22.  Plaintiffs note that defendants disclosed to the U.S.

16  Securities and Exchange Commission that the "cash sweeps" feature helps them to

17  generate revenue.  Id. ¶ 28.

18      Plaintiffs allege that defendants violated fiduciary duties by overconcentrating

19  plaintiffs' SIP accounts in cash positions.  Id. at 34.  Plaintiffs assert six causes of action

20  based on this conduct: (1) breach of fiduciary duty at common law, (2) violation of

21  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, (3)

22  negligent misrepresentation, (4) breach of contract, (5) unjust enrichment and imposition

23  of constructive trust, and (6) breach of the covenant of good faith and fair dealing.  Id. at

24  28–34.

25      First, plaintiffs allege a breach of fiduciary duty, stating that defendants owed them

26  the highest duties in performing their financial services and acting as an investment

27  adviser on their behalf.  Id. ¶ 74.  Plaintiffs allege that defendants breached, among other

28  things, their fiduciary duties of loyalty and prudence by causing plaintiffs and the

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  proposed class to be too heavily invested in cash in their SIP accounts in contravention

2  of their investment objectives, financial situations, and investment risk tolerance.  Id. ¶

3  75.  Plaintiffs allege defendants' allocation of cash caused them financial losses.  Id. ¶

4  76.

5      Second, plaintiffs allege defendants engaged in business acts and practices

6  deemed "unlawful" under the UCL because defendants violated their legal duties under

7  fiduciary, consumer protection, and contract laws.  Id. ¶ 82.  Plaintiffs also allege

8  defendants engaged in business acts and practices deemed "unfair" under the UCL

9  because defendants systematically placed their interests before the interests of plaintiffs

10  and engaged in deceptive conduct and self-dealing at plaintiffs' expense.  Id. ¶ 83.

11      Third, plaintiffs allege defendants that negligently misrepresented the terms of the

12  SIP Program.  Id. ¶ 92.  Specifically, plaintiffs allege defendants represented that SIP

13  would invest their assets in accordance with their individual investment objectives,

14  situations, and investment risk tolerance, but defendants instead caused the assets to be

15  imprudently over-allocated to cash for defendants' own financial benefit.  Id. ¶ 94.

16  Plaintiffs allege they have "been substantially harmed" because "had their assets been

17  invested prudently in other available alternatives, instead of being held hostage in cash

18  (from which they could not opt out), they would have made significantly more profits on

19  their investments."  Id. ¶ 97.

20      Fourth, plaintiffs allege that defendants breached express and implied contracts

21  by, among other things, failing to invest plaintiffs' assets in accordance with plaintiffs'

22  investment objectives and causing plaintiffs' assets to be imprudently over-allocated to

23  cash for the financial benefit of defendants at the expense of plaintiffs.  Id. ¶ 105.

24      Fifth, plaintiffs allege that by engaging in self-dealing and inequitable conduct in

25  connection with managing their SIP investments, defendants unjustly obtained payments

26  from plaintiffs in the form of interest, charges, fees, expenses, and costs.  Id. ¶ 110.

27  Plaintiffs allege that defendants were, and will continue to be, unjustly enriched if they are

28  permitted to retain the funds, and thus request a constructive trust.  Id. ¶ 111.

1  Sixth, plaintiffs allege that defendants breached the common law duty of good faith
2  and fair dealing by causing plaintiffs "to be invested in excessive and imprudently large
3  cash positions in the SIP Program." Id. ¶ 115.
4  On February 1, 2022, defendants moved to dismiss plaintiffs' FAC. Dkt. 48.
5  Defendants seek to dismiss plaintiffs' FAC on two grounds. First, defendants move to
6  dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing the Securities Litigation
7  Uniform Standards Act of 1998 ("SLUSA") bars this action. Id. Second, defendants
8  move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing plaintiffs have
9  failed to state a claim for any of their causes of action. Id.

**DISCUSSION**

**A.    Legal Standard**

**1.    Federal Rule of Civil Procedure 12(b)(1)**

Federal courts may adjudicate only actual cases or controversies. See U.S.
Const. Art. III, § 2. "Dismissals under SLUSA are jurisdictional [and] governed by Federal
Rule of Civil Procedure 12(b)(1)." Anderson v. Edward D. Jones & Co., L.P., 990 F.3d
692, 699 (9th Cir. 2021) (2022) (internal quotation marks and alterations omitted). As
such, the court "accept[s] factual allegations in the complaint as true and construe[s] the
pleadings in the light most favorable to the nonmoving party" when evaluating plaintiffs'
claims. Id. (internal quotation marks omitted).

**2.    Federal Rule of Civil Procedure 12(b)(6)**

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6)
"based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201,
1208 (9th Cir. 2019) (internal quotation marks omitted). A motion to dismiss under
Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims
alleged in the complaint. See Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir.
2003). A complaint generally must satisfy the pleading requirements of Federal Rule of
Civil Procedure 8, which requires that a complaint include a "short and plain statement of

United States District Court
Northern District of California

4

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When reviewing a 12(b)(6) motion, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 900 (9th Cir. 2007).  However, a court need not accept legally conclusory statements that are not supported by actual factual allegations.  See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1014 (9th Cir. 2005).

**B.    Analysis**

Defendants argue plaintiffs' lawsuit is barred by SLUSA.  "SLUSA deprives a federal court of jurisdiction to hear (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security."  Banks v. N. Tr. Corp., 929 F.3d 1046, 1050 (9th Cir. 2019) (internal quotation marks omitted).  The statute "is designed to prevent persons injured by securities transactions from engaging in artful pleading or forum shopping in order to evade limits on securities litigation that are designed to block frivolous or abusive suits."  Anderson, 990 F.3d at 699.  A "claim is not automatically SLUSA-barred merely because it involves securities."  Id. at 700 (internal quotation marks omitted).  The court "must determine if the Plaintiffs' claims, stripped of formal legal characterization, could have been pursued under § 10(b) and Rule 10b-5."  Id. (internal quotation marks omitted).

5

United States District Court
Northern District of California

1    Reading the complaint in a light most favorable to plaintiffs, the court finds that

2    SLUSA bars plaintiffs' complaint in its entirety.  First, this case concerns a covered class

3    action.  A "covered class action" includes one in which "damages are sought on behalf of

4    more than 50 persons" or the "named parties seek to recover damages on a

5    representative basis on behalf of themselves and other unnamed parties similarly

6    situated."  15 U.S.C. § 78bb(f)(5)(B)(i).  Here, plaintiffs seek actual damages on behalf of

7    themselves and a proposed class defined as all "'Intelligent Portfolios' account holders

8    during the four years preceding the filing of this Complaint and continuing until the date of

9    trial."  FAC ¶ 65–67.

10    Second, plaintiffs' claims are based in state law.  Plaintiffs assert only six causes

11    of action, and all the causes of action are based in state law. Id. at 28–34.  Specifically,

12    plaintiffs assert breach of fiduciary duty, a violation of the UCL, negligent

13    misrepresentation, breach of contract, unjust enrichment, and breach of the covenant of

14    good faith and fair dealing.  Id.  All of these claims arise under "the statutory or common

15    law" of California.  15 U.S.C. § 78bb(f)(1).

16    Third, plaintiffs allege a misrepresentation.  Specifically, plaintiffs allege that, while

17    defendants explained that SIP had a cash allocation component, defendants over-

18    allocated their cash investments contrary to defendants' initial representations.  FAC ¶

19    94.  Specifically, plaintiffs allege defendants represented that SIP would invest their

20    assets in accordance with their individual investment objectives, situations, and

21    investment risk tolerance, but defendants instead caused the assets to be imprudently

22    over-allocated to cash for defendants' own financial benefit.  Id.  Defendants' alleged

23    misrepresentation is the basis of all of plaintiffs' claims.

24    Fourth, plaintiffs allege defendants' misrepresentation was made in connection

25    with the sale or purchase.  A misrepresentation is made in connection with a sale or

26    purchase "where the misrepresentation makes a significant difference to someone's

27    decision to purchase or to sell a covered security . . . ."  Chadbourne & Parke LLP v.

28    Troice, 571 U.S. 377, 387 (2014).  Plaintiffs' entire complaint revolves around their

6

United States District Court
Northern District of California

1   reliance on defendants' misrepresentations and their alleged lost gains from securities as

2   a result.  For example, plaintiffs allege defendants' misrepresentation caused them to

3   "miss out on market gains they would have enjoyed had Schwab and CSIA instead

4   managed their . . . accounts loyally and prudently, and had [d]efendants not put their own

5   interests before those of their clients, as they have done here."  FAC ¶ 19.  Plaintiffs also

6   allege they lost out on gains from other securities in other segments of the market, stating

7   "the problem for SIP clients is that equity and bond markets have both experienced

8   strong returns for the last six years, making cash a costly investment."  Id. ¶ 21.  In sum,

9   the heart of plaintiffs' complaint is that they would have rather purchased securities with

10  the cash defendants let sit in Charles Schwab Bank.  And plaintiffs have not alleged that

11  they would have simply canceled or closed their accounts with defendants.  See

12  Anderson, 990 F.3d at 706 (noting the "[c]losing an investment account is not equivalent

13  to buying or selling a covered security").  Instead, plaintiffs take issue with how

14  defendants invested their funds within the SIP Program and are seeking damages in the

15  form of lost gains from the market.

16          Finally, defendants' alleged misrepresentation was made in connection with the

17  sale or purchase of a covered security.  A "covered security" "means a security that

18  satisfies the standards for a covered security specified in paragraph (1) or (2) of section

19  18(b) of the Securities Act of 1933 . . . ."  15 U.S.C. § 78bb(f)(5)(E).  Section 18(b)

20  defines "covered securities" to include securities "qualified for trading in the national

21  market system . . . . or authorized for listing, on a national securities exchange," and

22  securities "issued by an investment company that is registered . . . under the Investment

23  Company Act of 1940."  15 U.S.C. § 77r(b)(1)-(2).  As explained, plaintiffs intended to

24  purchase ETFs or other stocks on the market with the SIP Program.  Publicly traded

25  stocks, including ETFs, are securities covered by 15 U.S.C. § 77r.

26          Accordingly, the court GRANTS defendants' motion to dismiss pursuant to FRCP

27  12(b)(1).

28          Because the court does not have jurisdiction over this matter, it does not address

7

1  defendants' motion to dismiss pursuant to FRCP 12(b)(6) nor does it address defendants'

2  request for judicial notice.  The court, however, does grant defendants' motion to seal.

3  Defendants' sealing requests all meet the compelling reasons standard because they

4  concern plaintiffs' personal financial information.  See Huntsman v. Sw. Airlines Co., No.

5  19-CV-00083-PJH, 2021 WL 391300, at *16 (N.D. Cal. Feb. 3, 2021).

6         **IT IS SO ORDERED.**

7  Dated: June 7, 2022

8                                                    _____/s/ *Phyllis J. Hamilton*_____

9                                                    PHYLLIS J. HAMILTON
                                                     United States District Judge